UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRIN LEE PACHECO, | No. 2:11-cv-02997 TLN AC P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATION |
| FRANK CHAVEZ, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2008 conviction for voluntary manslaughter (ECF No. 1). Respondent has answered, ECF No. 17, and the time period to file a traverse has expired.

For the reasons that follow, the undersigned recommends that the petition be denied on the merits without an evidentiary hearing.

I.  Factual Background

To state it succinctly, petitioner was convicted of voluntary manslaughter for bringing a knife to a fist fight and "stab[ing] to death a man who was already being held in a chokehold." Lodged Doc. No. 2, at 9 (California Court of Appeal opinion). While at a family barbecue at his brother's house, petitioner intervened in a fight between Paul Prestridge and petitioner's brother,

1

Rick Pacheco.[1] Petitioner ended up stabbing Prestridge to death. This fight was precipitated by a verbal argument concerning a marijuana dealer who was described as a "chomo," which is prison slang used to identify child molesters. 1 R.T. 116-119. When neither Pacheco nor petitioner would agree that the individual being discussed was a "chomo," Prestridge started slapping and punching Pacheco who tried to reason with Prestridge while shielding himself from the blows. 1 R.T. 140, 161, 211-212, 2 R.T. 391.

While Prestridge and Pacheco were fighting, petitioner went to the kitchen and grabbed a steak knife. I. R.T. 275-76, 316-317. Two female guests at the BBQ who were in the kitchen tried to convince petitioner to drop the knife. 2 R.T. 393. "One of them, Angela McConley, tried to take the knife away from [petitioner] but [petitioner] pushed past her, cutting her arm in the process." People v. Pacheco, C059253 (Cal. Ct. App. 2010) (unpub.); see Lodged Doc. No. 4, at 2. When petitioner entered the fight it had moved into the dining room of Pacheco's house. By that time, Pacheco had Prestridge in a chokehold while the two men were wrestling on the floor. 1 R.T. 162, 168, 199. Petitioner stood over Prestridge and made swinging motions hitting the victim in the face and in the left rib cage while someone else screamed from the kitchen that "[h]e's got a knife." 1 R.T. 163-165. Although other people were present in the house, no one saw petitioner directly inflict the fatal stab wound to the victim's chest. 1 R.T. 166, 194. The small steak knife observed at petitioner's feet immediately after the fight was later found on a dresser inside the house by police. 1 R.T. 89, 170.

After the altercation with petitioner, Prestridge was able to stand up and walk to the front door. Meanwhile, petitioner returned to the kitchen, grabbed a large butcher-style knife, and told a friend to "get the fuck out of his way so he could finish this." 1 R.T. at 169-170, 214-15. Prestridge then complained that he could not breathe and he collapsed at the front door of Pacheco's house. 1 R.T. 171. Autopsy results established that Prestridge died as a result of a fatal stab wound to his heart. 2 R.T. 463-65, 492.

The medical examiner opined that the small steak knife was the type of instrument that

---

[1] To distinguish between Darrin Pacheco and his brother, Rick Pacheco, the court will refer to Darrin hereinafter as "petitioner" and his brother as "Pacheco."

could cause the victim's fatal stab wound whereas the larger butcher-style knife was not capable of causing the mortal wound because the blade was too large.[2] 2 R.T. 459, 505. DNA examination of blood found on the small steak knife revealed the presence of blood from Paul Prestridge as well as Rick Pacheco. 1 R.T. 229, 232. Petitioner was excluded as a possible source of the blood found on the large butcher-style knife. 1 R.T. 230. A latent print examiner testified that the impression developed on the large knife was made by petitioner's left thumb. 2 R.T. 371.

Petitioner was charged with the murder of Prestridge and the assault with a deadly weapon on Angela McConley. 1 C.T. 1-3. The jury acquitted petitioner of both first and second degree murder, but found him guilty of the lesser included offense of voluntary manslaughter. 2 C.T. 344-346. The jury found true the allegation that petitioner personally used a dangerous and deadly weapon, i.e. a knife, in the commission of the offense. 2 C.T. 347. Petitioner was also acquitted of the assault with a deadly weapon charge against McConley. 2 C.T. 348. The trial court sentenced petitioner to a total term of 39 years to life under California's Three Strikes Law. 2 C.T. 500.

II.     Standards Governing Habeas Relief Under the AEDPA

28 U.S.C. § 2254, as amended by the AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529

---

[2] The medical examiner also testified that the victim had a sharp-force, stab-type wound on the back of his right hand, on his left lower leg, and right lower back which were all consistent with being inflicted by the small steak knife. 2 R.T. 481, 486, 491.

U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407–08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520–21 (2003). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. See, e.g., Williams, 529 U.S. at 397–98; Wiggins, 539 U.S. at 526–28 & 534; Rompilla v. Beard, 545 U.S. 374, 388–909 (2005); Porter v. McCollum, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was announced. Lockyer, 538 U.S. at 76. The AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. Panetti v. Quarterman, 551 U.S. 930, 953 (2007). Even a general standard may be applied in an unreasonable manner. Id. In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. Id. at 948.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003). Clearly established federal law also includes "the legal principles and standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir.2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir.2002)). Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir.2000).

Although not at issue here, relief is also available under AEDPA where the state court predicates its adjudication of a claim on an unreasonable factual determination. 28 U.S.C. § 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court. Even factual determinations that are generally accorded heightened deference, such as

4

1   credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2).  See
2   e.g., Miller–El v. Dretke, 545 U.S. 231, 240 (2005) (rejecting credibility finding as unreasonable
3   in light of the evidence before the state court).

4   Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a
5   state prisoner's application for a writ of habeas corpus."  Williams, 529 U.S. at 412.  To prevail,
6   therefore, a habeas petitioner must establish the applicability of one of the § 2254(d) exceptions
7   and also must also affirmatively establish the constitutional invalidity of his custody under pre-
8   AEDPA standards.  Frantz v. Hazey, 533 F.3d 724 (9th Cir.2008) (en banc).  There is no single
9   prescribed order in which these two inquiries must be conducted. Id. at 736–37.  The AEDPA
10  does not require the federal habeas court to adopt any one methodology.  Lockyer v. Andrade,
11  538 U.S. 63, 71 (2003).

12  III.    <u>The State Court Adjudication of Petitioner's Claims</u>

13  The California Court of Appeal decision, Lodged Doc. No. 4, constitutes the last reasoned
14  decision on the merits of petitioner's claims involving evidentiary issues, because the state
15  supreme court denied discretionary review.  See Ylst v. Nunnemaker, 501 U.S. 797 (1991).  The
16  last reasoned state court opinion concerning petitioner's ineffective assistance of counsel claim is
17  the Butte County Superior Court's denial of habeas corpus relief.  Lodged Doc. No. 8.
18  Accordingly, these opinions form the basis of this court's AEDPA review for reasonableness.
19  See 28 U.S.C. § 2254(d).  Because the state courts adjudicated these claims in reasoned opinions,
20  review under § 2254(d) is confined to "the state court's actual reasoning" and "actual analysis."
21  Frantz, 533 F.3d at 738.

22  There is no reasoned state court opinion concerning petitioner's prosecutorial/judicial
23  misconduct claim.  This claim was raised for the first time on state habeas review and the Butte
24  County Superior Court declined to reach the merits, finding that the claim should have been
25  raised on appeal.  See Lodged Doc. No. 8 (citing In re Harris, 5 Cal.4th 813, 825-26 (1993); In re
26  Waltreus, 62 Cal.2d 218, 225 (1965), In re Dixon, 41 Cal.2d 756, 759 (1953), and In re Clark, 5
27  Cal.4th 750, 765 (1993)).  Respondent mentions this procedural ruling in passing, but does not
28  argue that the claim is procedurally defaulted as a result.  ECF No. 17, at 21.  Instead, respondent

argues that the claim fails on the merits. Id. at 21-22.  Because there is no reasoned state court opinion adjudicating this claim, the court will apply a de novo standard of review.[3]  See Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

IV.     The Trial Court's Exclusion of Third Party Culpability Evidence

In his first claim for relief, petitioner contends that the trial court violated his right to due process and to present a defense by excluding third party culpability evidence.  When a defense investigator asked petitioner's brother, Rick Pacheco, whether he may have grabbed the knife and swung it at Prestridge to defend himself, Pacheco stated "I may have.  I don't know.  I don't think so, but it's possible." 2 R.T. 661.  Petitioner argues this statement was admissible as a declaration against penal interest and should have been admitted once Pacheco invoked his Fifth Amendment privilege to not testify and was therefore unavailable as a witness.  The trial court excluded the statement finding that even though Pacheco was unavailable, the statement was neither against his penal interest nor reliable. 2 R.T. 669-670.  "It is at most speculative, it's ambiguous, and, if anything, would point to some exculpatory comments rather than the kind of statement that would subject the declarant to the person who was hearing it to have that reflection that the person had done a criminal act."  Id.

    *A.     The Clearly Established Federal Law Governing the Claim*

A defendant has a constitutional right to present relevant evidence in his own defense. Moses v. Payne, 555 F.3d 742, 756–57 (9th Cir. 2009); see also Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (internal quotation marks omitted).  However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions," such

---

[3] District courts retain the discretion to determine a petition on its merits, bypassing an asserted procedural bar, where the underlying claims are "clearly not meritorious." See Lambrix v. Singletary, 520 U.S. 518, 525, (1997); see also Day v. McDonough, 547 U.S. 198, 208–09 (2006) (district courts can exercise discretion in each case to decide whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition); Granberry v. Greer, 481 U.S. 129, 135 (1987) (discussing ability of district court to bypass exhaustion determination where the petitioner does not raise a colorable federal claim). In this case, respondent does not rely on the procedural bar so the court will not address it.

1  as evidentiary and procedural rules.  Moses, 555 F.3d at 757 (quoting United States v. Scheffer,
2  523 U.S. 303, 308 (1998)).  The Supreme Court approves of "well-established rules of evidence
3  [that] permit trial judges to exclude evidence if its probative value is outweighed by certain other
4  factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."  Holmes
5  v. South Carolina, 547 U.S. 319, 326 (2006).  The exclusion of evidence under such well-
6  established evidentiary rules is unconstitutional only where it "significantly undermine[s]
7  fundamental elements of the accused's defense."  Scheffer, 523 U.S. at 315.  Generally, without
8  "unusually compelling circumstances" the right to present a defense is not outweighed by the
9  strong state interest in administration of its trials.  Moses, 555 F.3d at 757; Perry v. Rushen, 713
10 F.2d 1447, 1452 (9th Cir.1983).  A state court's interpretation of its own evidentiary rules only
11 rises to a constitutional violation if it amounts to a per se bar on critical defense evidence or if it
12 applies the rules of evidence in a mechanistic fashion.  See Green v. Georgia, 442 U.S. 95 (1979)
13 (per curiam); Chambers v. Mississippi, 410 U.S. 284 (1973).

   B.   *The State Court Adjudication of the Claim.*

   The California Court of Appeal concluded that the trial court's application of the ordinary rules of evidence did not infringe on petitioner's right to present a defense in this case.  Lodged Doc. No. 2 at 6.  Pacheco's statement was "equivocal at best—he said that he 'may have' swung the knife at Prestridge but was unsure, and did not think he had."  Lodged Doc. No. 2 at 5-6.  And the reliability of the statement was also suspect because it was "made under circumstances strongly suggesting that Rick[y Pacheco] was motivated to exonerate his brother, while limiting his own criminal exposure."  Id. at 6.

   C.   *Analysis*

   The conclusion of the state court of appeal was not contrary to or an unreasonable application of clearly established Supreme Court precedent, and was based on a reasonable determination of the facts in the record.  28 U.S.C. § 2254(d).  Here, petitioner was not foreclosed from presenting his defense that his brother was the actual perpetrator of the stabbing.  Defense counsel was able to cross-examine not only the percipient witnesses to the stabbing but also the medical examiner about Pacheco's ability to perpetrate the fatal wound.  The exclusion of a single

7

statement by petitioner's brother that was self-serving and not reliable does not rise to the level of a constitutional violation. The state court did not apply the rules of evidence in a mechanistic fashion so as to defeat the presentation of petitioner's defense that he did not stab the victim. For these reasons, it is recommended that habeas relief be denied on this claim.

V.      The Trial Court's Exclusion of the Victim's Tattoo and Gang Affiliation

Next petitioner argues that his right to present a defense was violated by the trial court's exclusion of expert testimony about the victim's gang tattoo as well as the gang's virulent attitude toward "chomos." First, defense counsel sought to introduce evidence that Prestridge had a tattoo which indicated his affiliation with the Aryan Brotherhood prison gang. 2 R.T. 536-37. To explain the tattoo's relevance to the fight between Prestridge and Pacheco, defense counsel proferred the expert testimony of Special Agent Matthew Buechner from the California Department of Corrections and Rehabilitation. Agent Buechner would testify that the Aryan Brotherhood is known to attack child molesters as well as their associates; the term "'chomo' is a serious insult in prison culture because it means 'child molester;' and, that 'chomos' are often subject to beatings or stabbings." Lodged Doc. No. 2 at 7; see also 2 R.T. at 534-537. According to petitioner, this testimony was necessary to explain Prestridge's motivation for starting the fight as well as petitioner's reasonable fear that Prestridge was going to substantially injure his brother during the confrontation concerning a suspected "chomo."

*A.     Trial Court Evidentiary Ruling*

While the trial court permitted Agent Buechner to testify about the meaning of the word "chomo" and its significance in prison culture, it excluded evidence of Prestridge's gang affiliation and its attitude towards child molesters. The trial court reasoned that without any evidence of petitioner's state of mind during the attack, this evidence was inadmissible. 2 R.T. at 539-540.

*B.     Analysis*

Antecedent to any analysis of the federal constitutional issue is a determination of whether the last reasoned state court opinion actually adjudicated this claim "on the merits." Petitioner

1  and respondent's briefs are completely silent on this question.[4]  On direct appeal, the state court

2  initially found this claim was forfeited because the trial court's ruling was not final.  Lodged Doc.

3  No. 2 at 8.  However, it then went on to assume, without deciding, that the exclusion of the

4  evidence was error under state rules of evidence, and found any such state law error harmless

5  under People v. Watson, 46 Cal.2d 818, 836 (1956).  Id. at 9-10.  The court explicitly did not

6  apply the harmless error standard applicable to federal constitutional violations.  See Chapman v.

7  California, 386 U.S. 18, 24 (1967).  Thus, even applying the rebuttable presumption that a fairly

8  presented constitutional claim was "adjudicated on the merits" for purposes of 28 U.S.C. §

9  2254(d), in this case that presumption is rebutted.  See Harrington v. Richter, 131 S. Ct. 770, 784

10 (2011) (holding that "[w]hen a federal claim has been presented to a state court and the state court

11 has denied relief, it may be presumed that the state court adjudicated the claim on the merits in

12 the absence of any indication or state-law procedural principles to the contrary."); Johnson v.

13 Williams, 133 S. Ct. 1088 (2013) (holding that "[w]hen a state court rejects a federal claim

14 without expressly addressing that claim, a federal habeas court must presume that the federal

15 claim was adjudicated on the merits—but that presumption can in some limited circumstances be

16 rebutted.").

17       Since the state court did not adjudicate the constitutional claim on its merits, this court

18 applies a de novo standard of review.  See Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir.

19 2006).  However, application of this more generous standard does not lead to any relief for

20 petitioner.  The court assumes without deciding that the exclusion of the gang evidence violated

21 petitioner's Sixth Amendment right to present a defense, but finds this error was harmless.  See

22 Brecht v. Abrahamson, 507 U.S. 619 (1993) (holding that "the standard for determining whether

23 habeas relief must be granted is whether the… error 'had substantial and injurious effect or

24 influence in determining the jury's verdict.'").  Petitioner's efforts at trial to argue defense of

25 others and heat of passion were simply never going to convince a reasonable juror to entirely

---

[4] Respondent indicates in his answer that "the claim would have to fail even on de novo review," but does not provide any analysis as to why de novo review would apply to this claim.  ECF No. 17 at 14.

1  acquit. Adding the additional proffered gang evidence would not have convinced a reasonable
2  juror that petitioner was not guilty of manslaughter beyond a reasonable doubt. At the time that
3  petitioner struck the fatal blow, petitioner's brother was winning the wrestling match and the
4  victim was overheard saying "I'm done, I want to go home." 1 R.T. 164. Given the facts before
5  the jury, reducing petitioner's criminal culpability from murder to manslaughter was the best
6  potential trial outcome for the defense. Petitioner would have fared no better had the gang
7  evidence been admitted. Accordingly, the undersigned finds that the alleged constitutional error
8  did not have a substantial or injurious effect on the jury's verdict, see Brecht, 507 U.S. at 623, and
9  recommends the denial of habeas relief on this claim.

10 VI.   Sentencing Error[5]

11       In his third claim for relief, petitioner alleges that the trial court abused its discretion when
12  it denied his motion to strike his prior serious felony convictions at sentencing.[6] This claim
13  presents only a state law sentencing error that is not cognizable in habeas. See Souch v. Schiavo,
14  289 F.3d 616 (9th Cir. 2002) (a claim challenging state court's discretionary decision concerning
15  application of state sentencing law presented only state law issues and was not cognizable in a
16  proceeding pursuant to 28 U.S.C. § 2254). Absent a showing of fundamental unfairness, a state
17  court's misapplication of its own sentencing law does not support habeas relief. Christian v.
18  Rhode, 41 F.3d 461, 469 (9th Cir. 1994); see also Miller v. Vasquez, 868 F.2d 1116 (9th Cir.
19  1989) (declining to examine state court's determination that petitioner's prior conviction was for a
20  "serious felony" for purposes of state sentencing regime). Federal courts are "bound by a state
21  court's construction of its own penal statutes," Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir.
22  1993), and this court must defer to the California courts' application of the three strikes law unless
23  that interpretation is "untenable or amounts to a subterfuge to avoid federal habeas review of a
24  constitutional violation." Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), cert. denied,

---

[5] Respondent asserts that this claim is unexhausted due to petitioner's failure to include this claim in his petition for review in the California Supreme Court or his separately filed habeas corpus petition in the California Supreme Court. ECF No. 17 at 16. Because the court finds that this claim is not cognizable in federal habeas, there is no need to address the exhaustion issue.

[6] This is referred to in state parlance as a "Romero" motion and is based on the California Supreme Court's decision in People v. Romero, 13 Cal.4th 497 (1996).

1  493 U.S. 942 (1989). Here there is no allegation that the state court's application of the three
2  strikes law was completely untenable or done to avoid federal review of petitioner's sentence.
3  For that reason, it is recommended that the claim be denied.

4  VII.    <u>Ineffective Assistance of Counsel Claims</u>

5  Petitioner challenges the effectiveness of his trial counsel based on three broad categories
6  of errors. He alleges that counsel (1) failed to discover exculpatory evidence; (2) failed to fully
7  investigate and use witnesses helpful to the defense; and (3) made crucial case decisions without
8  consulting with Mr. Pacheco.

9  Although it is not entirely clear what exculpatory evidence petitioner is referring to in his
10 first subclaim, the court will address the first two alleged errors as one over-arching
11 ineffectiveness claim based on trial counsel's failure to produce evidence favorable to the
12 defense. Specifically, petitioner contends that counsel unreasonably failed to call three witnesses
13 to testify in his defense: Larry Dean Pacheco, Jesse Pacheco, and Rick Pacheco. In support of
14 this claim petitioner submitted affidavits from each of these individuals. <u>See</u> Lodged Doc. No. 11
15 at Exhibit A-C (California Supreme Court habeas corpus petition). Petitioner alleges that these
16 witnesses would have confirmed Prestridge's harmful intentions to harm or kill petitioner's
17 brother, Rick Pacheco, on the night of the stabbing. To that end, the affidavits from Larry and
18 Jesse Pacheco describe a conversation they had with Jim Cooper that occurred the day after the
19 incident. <u>See</u> Lodged Doc. No. 11 at Exhibit A-B. Cooper stated that "Paul went up there [to
20 Pacheco's house] to cause some damage." Lodged Doc. No. 11 at Exhibit A. Although it is not
21 clear from the affidavits what this specifically meant, it was apparently interpreted to mean that
22 Prestridge intended to commit some act of violence. The affidavit provided by Rick Pacheco
23 indicates that Jim Cooper called Pacheco's house immediately after the stabbing to ask what was
24 going on with Prestridge. Lodged Doc. No. 11 at Exhibit C. Petitioner faults trial counsel for not
25 calling these witnesses to testify about Prestridge's purported intent on the night of the stabbing.

26      *A.    The Clearly Established Federal Law Governing the Claims*

27 To establish a constitutional violation based on ineffective assistance of counsel, a
28 petitioner must show (1) that counsel's representation fell below an objective standard of

11

1 reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v.
2 Washington, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an
3 adverse effect on the defense.  There must be a reasonable probability that, but for counsel's
4 errors, the result of the proceeding would have been different. Id. at 693–94.  The court need not
5 address both prongs of the Strickland test if the petitioner's showing is insufficient as to one
6 prong. Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of
7 sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

  *B.  The State Court Adjudication of the Claims*

  In summary fashion, the Butte County Superior Court denied relief on all the ineffective assistance of counsel claims based on lack of prejudice because there was no "reasonable probability that a more favorable outcome would have resulted." See Lodged Doc. No. 8 at 2.

  *C.  Analysis*

  The state court did not unreasonably apply the Strickland standard in rejecting this claim. The affidavits upon which petitioner relies do not provide evidence to establish that petitioner had an actual belief in the need to use immediate and deadly force to defend against Prestridge's attack on his brother.  Information gleaned after the fact cannot have had any impact on petitioner's state of mind during the attack, which was the missing component at the time of trial. Therefore, the proffered testimony does not bolster the defense nor does it demonstrate a reasonable probability of a different outcome.  For that reason, it is recommended that relief be denied on this ineffectiveness claim.

  Petitioner's final ineffective assistance of counsel allegations suffer from a separate, yet fatal, flaw.  In a conclusory fashion, petitioner alleges that counsel made crucial decisions without first consulting him.[7]  However, petitioner does not identify any specific decisions that were made without consultation, much less describe how any different decisions would have changed the outcome.  The Ninth Circuit Court of Appeal has made it clear that "[c]onclusory allegations

---

[7] It should be noted that the only two decisions for which counsel is not responsible during trial are: 1) deciding whether to plead not guilty or guilty; and, 2) whether defendant will testify. Those two decisions are the defendant's decision alone.  However, all other decisions are a matter of strategy and trial tactics that are in the exclusive purview of defense counsel.

which are not supported by a statement of specific facts do not warrant habeas relief." James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994). Accordingly, the court will recommend denying relief on this separate claim.

VIII.   Prosecutorial/Judicial Misconduct Claim

In his last claim for relief petitioner alleges that the prosecutor, the judge, and even his own defense counsel committed misconduct by coercing Rick Pacheco, who was the real perpetrator of the stabbing, to invoke his Fifth Amendment privilege and not testify in front of the jury. Petitioner argues that there was direct evidence identifying his brother Rick Pacheco as the actual perpetrator since his DNA was found on the small steak knife. See ECF No. 1 at 92. "Based on the autopsy it was possible that the fatal wound was inflicted by a person who had someone in a headlock and a knife in the other hand, which described Pacheco's position." Id.; see also 2 R.T. 518. According to petitioner, the prosecutor impliedly threatened Pacheco with a 7-8 year prison sentence if he testified. ECF No. 1 at 92.

A.   *The Clearly Established Federal Law Governing the Claim*

To prevail on this claim, petitioner must establish that the prosecutor's or the judge's threatening remarks "effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment." Webb v. Texas, 409 U.S. 95, 98 (1972). Petitioner also attempts to cast this claim as a Napue violation. See Napue v. Illinois, 360 U.S. 264 (1959). In Napue, the United States Supreme Court reversed a criminal conviction that was obtained through the use of false evidence that the prosecutor knew to be false.

B.   *Analysis*

Applying de novo review due to the lack of a reasoned state court adjudication of this claim, the undersigned finds that the claim is factually baseless. Petitioner's allegations are contradicted by his own proffered evidence. Specifically, Rick Pacheco's affidavit establishes that the individual who advised him of the potential to receive "up to seven or eight years" in prison was the attorney appointed by the court to advise Pacheco of his rights and potential criminal liability for holding the victim in a choke hold while petitioner stabbed him. See Lodged Doc. No. 11 at Exhibit C (affidavit). Nowhere in the affidavit does Pacheco allege that he was

threatened by the prosecutor, the trial judge, or petitioner's defense counsel. Id. The only aspersion cast on the prosecutor is that Pacheco felt "used" by him. Id. The reporter's transcript contains no hint of any threatening comment by either the judge or the prosecutor. Because the record belies petitioner's assertions, and petitioner has presented no facts sufficient to support relief under Webb, the undersigned will recommend denial of this claim.

To the extent that petitioner seeks relief under Napue, the claim is equally without factual support. The prosecutor did not knowingly elicit any allegedly false testimony from Pacheco. In fact, the record establishes that the prosecutor elected not to call Pacheco to testify as his witness because of anticipated perjury problems. 3 R.T. 602. And even when the defense called Pacheco to the stand, he simply invoked his Fifth Amendment privilege not to testify. 2 R.T. 654-55. Accordingly, there was no presentation of false evidence.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 19, 2013

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE